**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**JASON J. SPRINGER,**

**Petitioner,**

**v.** **Case No.: 8:19-cv-1843-T-27CPT**
**Criminal Case No.: 8:17-cr-174-T-27CPT**

**UNITED STATES OF AMERICA,**

**Respondent.**
______________________________________/

**ORDER**

**BEFORE THE COURT** are Petitioner Springer's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (cv Dkt. 1), his supplement (cv Dkt. 14), the United States' responses (cv Dkts. 7, 20), and Springer's reply (cv Dkt. 15). Upon review, Springer's § 2255 motion is **DENIED.**

**BACKGROUND**

In 2016, Springer went to a shooting range with his wife, Tugba Tokatlioglu, and Garrett and Chastity Cross. *See United States v. Springer*, 753 F. App'x 821, 823 (11th Cir. 2018). He fired at least one of the handguns the group had rented and, as a result, was indicted and charged with possession of a firearm as a convicted felon in Case No. 8:16-cr-541-T-24TGW ("the firearm case"). *Id.* While in jail pending trial, Springer threatened to kill the district judge assigned to his case. *Id.* at 823-24. And on April 5 and 6, 2017, he made phone calls to Tokatlioglu, directing her to dissuade the Crosses, who were under subpoena, from testifying. *Id.* at 824-25.

Based on this conduct, Springer was indicted in 8:17-cr-174-T-27CPT and charged with threatening to kill a federal judge in violation of 18 U.S.C. § 115(a)(1)(B) (Count One),

endeavoring to obstruct justice in violation of 18 U.S.C. § 1503 (Count Two), and attempted witness tampering in violation of 18 U.S.C. § 1512(b)(1) (Count Three). (cr Dkts. 1, 43). A jury found Springer guilty on Counts Two and Three but not Count One. (cr Dkt. 80).

The sole issue on Springer's appeal was whether the district court erred "by admitting evidence that [he] was a sympathizer of the Islamic State of Iraq and al-Sham ("ISIS"), a foreign terrorist organization." *Springer*, 753 F. App'x at 823. In affirming Springer's convictions and sentence, the Eleventh Circuit found that the challenged evidence "was necessary to provide context for and complete the story of the crime charged in Count One," that the "district court specifically instructed the jury, twice, that it was to consider the ISIS-related evidence only in connection with the offense charged in Count One," and that "ample evidence support[ed] the jury's guilty verdicts on Counts Two and Three." *Id.* at 828-29.

In his § 2255 motion, Springer raises eight claims relating to ineffective assistance of counsel. (cv Dkt. 1). He raises additional claims in his supplement. (cv Dkt. 14).[1] The United States responds that his claims are without merit. (cv Dkts. 7, 20). The Court agrees.

**STANDARD**

To establish ineffective assistance of counsel, Springer must demonstrate that (1) counsel's performance was constitutionally deficient, and (2) he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to

[1] Springer also filed a reply. (cv Dkt. 15). This Court is mindful of its responsibility to address and resolve all claims raised in Springer's motion. *Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992) (instructing "the district courts to resolve all claims for relief raised in a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254"). That said, nothing in *Clisby* requires or suggests consideration of a claim raised for the first time in a reply.

eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. And "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (citation and internal quotation marks omitted).

**DISCUSSION**

Because Springer cannot demonstrate that his counsel's performance was constitutionally deficient or that he was prejudiced as a result of deficient performance, his ineffective assistance of counsel claims fail. An evidentiary hearing is unnecessary.[2]

***Ground One***

In Ground One, Springer contends his counsel was ineffective

[2] An evidentiary hearing is not required if the § 2255 motion "and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Springer also "seeks leave to conduct discovery production of documents and disclosure from the U.S. of ALL typed, written or electronic versions of any and all e-mails, letters, memos and/or any form of communication from the U.S. Attorney's Office to any of the defense counsel in this case concerning:

A) Jail House Recordings
B) Exculpatory Evidence (transcripts of in court on the record confessions and admittance of guilt.).
C) Plea offers or agreements.
D) Witness testimony; (Jenks Act Information which was withheld by government until minutes before witnesses were called)."

(cv Dkt. 12 at 2-3). However, he does not specify how the requested information relates to the claims in his § 2255 motion. In any event, because the record demonstrates that he is not entitled to relief, the motion for discovery is denied. *See Prada v. United States*, 692 F. App'x 572, 575 (11th Cir. 2017) (finding no error in court's denial of motion to conduct discovery and expand the record where petitioner did not "suggest what evidence might come to light . . . or how it would assist his claims," and the "the record was sufficient to determine the merits of the case").

In the motion, Springer also mentions that the presentence investigation report (PSR) incorrectly included an assault charge that was dismissed. (cv Dkt. 12 at 2). However, Springer did not raise this claim in his § 2255 motion, and in any event, he fails to explain why he is entitled to relief, especially since the PSR did not include an assault charge in calculating his criminal history score. (cr Dkt. 93 at 8-11).

> because of his unfamiliarity with 18 U.S.C. 1512(b)(1) and 1503. § 1512(b)(1) does not parse well into my particular circumstance. . . . [S]ome of the required elements are completely absent, while others are, at best, arguable or speculative/interpretive. (Again, the ISIS commentary and references are overwhelmingly prejudicial. When someone is accursed of ISIS membership or assistance, ANY of their actions/conduct are immediately held in suspicious regard.)

(cv Dkt. 1 at 4). He further contends that he lacked the required *mens rea* of the crimes of conviction, reasoning that "the intimidation/threat/corrupt persuasion element must be between [him and Tokatlioglu]," who was "the only person [he] communicated to personally," and that "[if] any such communication was made by [Tokatlioglu] (or any other party) it would be the free will and actions of that person, and not [him]." (Id. at 5-6).[3] His contentions are without merit.

First, Springer is incorrect that 18 U.S.C. §§ 1503 and 1512(b)(1) require that he directly communicated with the witnesses or that his efforts to obstruct were successful. Indeed, the Eleventh Circuit affirmed Springer's convictions, explaining

> Springer was recorded on two separate occasions instructing . . . Tokatlioglu, to tell Garrett and Chastity Cross either (1) to testify that they did not know what kind of gun he used at the shooting range or (2) to not show up to testify at his firearm trial. Tokatlioglu told Springer that she had done what he asked, and Chastity Cross admitted that Tokatlioglu asked her not to testify at Springer's firearm trial. This evidence sufficiently demonstrates that Springer (1) corruptly endeavored to obstruct the administration of justice in his firearm case and (2) corruptly attempted to influence or prevent the Crosses' testimony. Though Garrett and Chastity both denied talking to Tokatlioglu about the substance of their testimony,

---

[3] In a footnote, the United States contends that Springer's claim that his "conduct simply doesn't fit the crimes of conviction" is subject to procedural default. (cv Dkt. 7 at 10 n.2). To explain why he did not raise this and other arguments on appeal, Springer notes "Per Fifth and Eleventh Circuit general stare decisis or policy to discourage or forbid 'hybrid representation' on Direct Appeal, Petitioner sent correspondence to trial/appellate counsel asking for particular issues to be raised in direct appeal. Issues referenced were not raised." (cv Dkt. 1 at 4).

To the extent Springer contends he is actually innocent of the crimes of conviction, it is unnecessary to determine whether the claim is procedurally defaulted or such a freestanding actual innocence claim is available, since Springer does not make the requisite showing. *See Rozzelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1010-12 (11th Cir. 2012).

> and Garrett denied being told not to testify, the jury was free to discredit their testimony. Moreover, the government was not required to prove that Springer's attempts to obstruct justice or tamper with the witnesses were successful.

*Springer*, 753 F. App'x at 829-30 (citations omitted); *see also United States v. Barfield*, 999 F.2d 1520, 1523 (11th Cir. 1993) ("[A] section 1503 offense is complete when one corruptly endeavors to obstruct or impede the due administration of justice; the prosecution need not prove that the due administration of justice was actually obstructed or impeded." (citations and emphasis omitted)).

The Eleventh Circuit also rejected Springer's contention that the ISIS-related evidence was so "overwhelmingly prejudicial" that it tainted the jury as to Counts Two and Three. *Springer*, 753 F. App'x at 829-30. In sum, Springer does not show how counsel's purported "unfamiliarity" with the criminal statutes constituted deficient performance or resulted in prejudice. Accordingly, the claim is due to be denied.[4]

As amended, Springer also alleges in Ground One that "counsel failed to discuss elements of the charged offense with [him] in order to advise him of the options available." (cv Dkt. 13 at 1-2). He further contends that, before trial, counsel "minimized" Counts Two and Three, allegedly stating "all they have is some phone conversation." (cv Dkt. 13-1 at 1).[5]

Springer appears to argue that had counsel adequately explained the elements of the charged offenses and did not "minimize" Counts Two and Three, he would have pleaded guilty.

---

[4] In response to Springer's claim, counsel avers in an affidavit that at trial he challenged the obstruction and witness tampering evidence and maintained that Springer accepted responsibility in the firearm case to show that Springer did not make any statements with the required *mens rea*. (cv Dkt. 7-1 ¶ 7). It is, in any event, unnecessary to rely on counsel's affidavit to resolve the claims in the motion, since the motion and record conclusively show that Springer is not entitled to relief.

[5] Counsel denies making these statements and failing to discuss the elements of the charged offenses with Springer. (cv Dkt. 7-1 ¶ 12; cv Dkt. 20-1 ¶¶ 3-4).

*See* (cv Dkt. 15 at 5). In support, he points to a statement he made at sentencing, "I apologize for even going to trial on this now that I understand what I did to obstruct justice." (cr Dkt. 108 at 34). However, even assuming his assertions establish deficient performance,[6] he is unable to demonstrate prejudice, which requires "a reasonable probability that, but for counsel's errors, he would . . . have pleaded guilty and would [not] have insisted on going to trial." *Ramirez v. United States*, 315 F. App'x 227, 229 (11th Cir. 2009) (citations and some modifications omitted).

First, although Springer claims that counsel failed to discuss the elements of the offenses, he acknowledges that counsel discussed the relevant evidence, including the telephone conversations. Accordingly, Springer was aware of the nature of the charges, which were also detailed in the superseding indictment. (cr Dkt. 43 at 2-3). And even if counsel did downplay the risks, Springer was certainly aware that a guilty verdict on Counts Two and Three was a possibility.

Tellingly, although Springer now claims that he would have pleaded guilty to Counts Two and Three, he nonetheless raises several arguments in multiple filings to establish his innocence. *See, e.g.*, (cv Dkts. 1, 12, 14, 15). As the United States correctly contends, this belies his assertion that he would have pleaded guilty. (cv Dkt. 20 at 7-10).

As noted by the Eleventh Circuit, a petitioner's refusal to accept responsibility during criminal proceedings contradicts his claim that he would have pleaded guilty with effective assistance of counsel. *Rosin v. United States*, 786 F.3d 873, 878-79 (11th Cir. 2015). Springer's

[6] Springer cites no authority that has found an attorney's performance deficient for failing to clarify the elements of a charged offense. And he does not explain why it would be unreasonable for an attorney to evaluate the risk of conviction on Counts Two and Three as comparatively low.

insistence on his innocence contradicts his newly amended assertion that he would have pleaded guilty.[7] Accordingly, he is unable to establish prejudice, and the claim fails.

***Ground Two***

In Ground Two, Springer contends "[c]ounsel was ineffective for not raising particular issues in appeal that had both relevance and a casual relationship to either Prosecutor Error/Misconduct, or Plain Error/Abuse of Discretion by the Court." (cv Dkt. 1 at 7). He further asserts that "[c]ounsel objected to government introducing any evidence related to ISIS," that at sentencing "counsel mentioned government's position to not charge Petitioner with 3 count indictment for guilty plea on April 10, 2017," that the United States "never showed consistent evidence of [his] knowledge of weaponized drones nor affiliation or support of ISIS," that threatening statements to kill the judge were improperly admitted, that counsel's motion for dismissal was denied, and that the Court assisted the United States "in preliminary proffer before allowing ISIS related testimony." (Id. at 7-8). He raises claims of ineffective assistance of counsel, deprivation of a fair trial, and due process violations. (Id. at 8). His contentions are without merit.

First, counsel appealed the trial court's admission of ISIS-related evidence and the Eleventh Circuit affirmed Springer's convictions, explaining that the evidence "was necessary to provide context for and complete the story of the crime charged in Count One, threatening a United

[7] Additionally, rather than point to a specific plea agreement that Springer rejected, he reasons that had he pleaded guilty he would not have been assessed a 2-level sentencing enhancement based on his false testimony. (cv Dkt. 15 at 5). At the time, however, he could not know that the Court would ultimately apply the enhancement, since he had not yet testified.

Moreover, to the extent Springer suggests that counsel did not spend enough time challenging Counts Two and Three at trial, the record belies his claim and it is due to be denied. He further fails to specify the basis of his claim that the supporting facts in Ground One constitute a constitutional violation independent to his ineffective assistance of counsel claim. In any event, the claim is due to be denied for the reasons discussed.

States Judge."[8] *Springer*, 753 F. App'x at 828. Counsel was not ineffective since he did appeal the issue.

Second, there was no basis for counsel to appeal the admission of certain threatening statements over a hearsay objection. The part of the record Springer cites relates to whether the victim judge could testify about the threats relayed to her by the United States Marshals Service. *See* (Dkt. 107 at 169-82). Springer has not shown that the evidence was improperly admitted as hearsay. And in any event, Springer cannot show prejudice because the evidence did not result in a conviction on Count One. Finally, he cites no authority to support his claim that he is entitled to relief on the basis that the United States rescinded its purported offer to not bring additional charges if he pleaded guilty in the firearm case. *See* (cr Dkt. 108 at 30; cv Dkt. 15 at 4, 9).

Accordingly, Springer cannot establish that counsel was ineffective, he was prejudiced by deficient performance, his trial was unfair, or his due process rights were violated. This claim is due to be denied.

***Ground Three***

In Ground Three, Springer contends

> By not entering motion or providing notice in pretrial according to Fed. R. Crim. P. 12.2(b) (Notice of Expert Evidence of a Mental condition); counsel failed to adequately investigate and present a mental health case and conduct and present an adequate and comprehensive mitigation investigation and present character witness who were properly prepared. At the end of March 2017, I began experiencing symptoms of psychosis, audio hallucinations, anxiety and depression. . . . . My counsel was ineffective for not presenting expert witness, testimony at trial to present the evidence to prove the effects this would have on my conduct on April 5th and 6th. It is a fact that the anti-psychotic mediation I began taking takes up to 30 days

[8] Counsel avers that he "carefully reviewed the record and chose to appeal the issue that was most likely to succeed and the only truly viable one." (cv Dkt. 7-1 ¶ 8).

> to start working. Due to this, I was prejudiced against my Constitutional protections under the Fifth and Sixth Amendments.

(cv Dkt. 1 at 10-11). His contention is without merit.

The United States argues that because there was no reason for Springer's counsel to know that Springer suffered a mental defect, his performance was not deficient. (cv Dkt. 7 at 17). Indeed, Springer does not allege that counsel ignored his request to present evidence relating to his purported mental defect, or that he ever informed counsel about the defect. [9]

The United States further contends that this is consistent with Springer's testimony at trial. (Id. at 20). In explaining the April 5 and 6 phone calls, Springer testified that he was "upset" because he "felt like the government was trying to turn my family against me, you know" and "it was just something I blurted out out of agitation, man. Like I was just frustrated, I was frustrated with the whole thing." (cr Dkt. 116 at 44-45). He did not mention a mental defect.

However, even if counsel had reason to believe that Springer suffered a mental defect and his failure to raise the issue constituted deficient performance, Springer has not demonstrated a

---

[9] Counsel avers that he had no indication that Springer, although anxious, suffered from a mental defect that would warrant a mental defect defense. (cv Dkt. 7-1 ¶ 9). The United States further points to circumstances in the firearm case, in which Springer had the same counsel, suggesting that counsel would have had no reason to suspect Springer suffered from a mental defect. For example, Springer did not mention the mental defect he now complains of at two change of plea hearings and a *Faretta* hearing. *See United States v. Springer*, 8:16-cr-541-T-24TGW, ECF: S-45, 47, 110.

Moreover, at Springer's request, a mental evaluation was performed on March 30, 2017, and the mental health worker reported that although Springer self-reported hallucinations, he "did not present as responding to internal stimuli" but rather "appeared anxious with good eye contact and normal thought flow." (cv Dkt. S-8-1 at 15); *Springer*, 8:16-cr-541-T-24TGW, ECF: 70 at 1. On April 5, a nurse visited Springer and reported that he appeared to have anxiety and prescribed an anti-anxiety medication. (cv Dkt. S-8-1 at 17). The next day, another nurse reported that Springer was calm with good eye contact and said he was feeling better, was not hallucinating, and the medication had helped. (Id.).

Springer contends that counsel should have been aware of his mental defect based on the sentencing and presentence investigation report in the firearm case. (cv Dkt. 15 at 11). However, he does not specify how any of the information indicates he lacked the necessary *mens rea* at the time of the offense. *See Springer*, 8:16-cr-541-T-24TGW, ECF: 94 at 11-12; 104.

reasonable probability that the result would have been different had counsel raised such a defense. Springer contends that counsel should have filed a notice under Rule 12.2(b), which is required to present evidence that the defendant lacked the required *mens rea* at the time of the offense due to a mental defect.[10] *United States v. Cameron*, 907 F.2d 1051, 1061-66 (11th Cir. 1990); *United States v. Puerto*, 392 F. App'x 692, 716-18 (11th Cir. 2010).

However, the Eleventh Circuit has instructed that

> only in the rare case . . . will even a legally insane defendant actually lack the requisite *mens rea* purely because of mental defect. When a defendant claims to have psychiatric evidence that she 'lacked the capacity' or was 'incapable' of forming the intent necessary for the crime charged, most often that defendant is speaking of an incapacity to reflect or control the behaviors that produced the criminal conduct. Such evidence is not 'psychiatric evidence to negate specific intent' and should not be admitted.

*Cameron*, 907 F.2d at 1066 (citations omitted). Accordingly, courts must evaluate the proposed evidence "to ascertain whether it would, if believed, support a legally acceptable theory of lack of *mens rea*." *Id.* at 1067 (internal quotation marks, citations, and emphasis omitted).

Springer has not shown that the proffered evidence supports a legally acceptable theory of lack of *mens rea*. At most, he alleges an incapacity to reflect or control the behaviors that produced the criminal conduct, which is insufficient. *See, e.g.*, *United States v. Lawson*, 459 F. Supp. 2d 1192, 1195-96 (M.D. Ala. 2006) (prohibiting mental defect evidence and noting that "a lack of conscious self-reflection does not mean a lack of intent"); *United States v. Shashy*, 281 F. Supp. 3d 1241, 1244-46 (M.D. Ala. 2017) (same).

[10] To present evidence of insanity, a defendant must give notice under Rule 12.2(a). Fed. R. Crim. P. 12.2(a). This is an affirmative defense that requires the defendant to prove by clear and convincing evidence that he, "as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts." 18 U.S.C. § 17. Springer does not contend it applies to his circumstances.

Additionally, Counts Two and Three required proof that Springer acted "corruptly," which means that he was "conscious of wrongdoing." *Arthur Anderson LLP v. United States*, 544 U.S. 696, 705-06 (2005). The surrounding facts and circumstances demonstrate Springer's corrupt intent, notwithstanding his alleged mental defect. Indeed, he instructed Tokatlioglu to tell the Crosses to lie about the type of gun he used at the gun range, which could affect the United States' ability to prove the nexus requirement of the felon in possession of a firearm charge. *See Springer*, 753 F. App'x at 824. He also had her tell the witnesses to "sit in jail" rather than testify, which suggests he knew that what he intended was illegal. *Id.*

Springer provides no authority, much less medical documentation, indicating that this is the "rare" case in which he lacked the required *mens rea* at the time of the offense due to a mental defect. And even if psychiatric evidence had been presented, Springer fails to show a reasonable probability that it would have affected the result at trial. Accordingly, he is unable to establish prejudice, and the claim fails.[11]

***Ground Four***

In Ground Four, Springer contends counsel was ineffective

> when it failed to capitalize on Government's evidence that supported a not guilty verdict. . . . Exhibit 25 of government's trial evidence is proof that my wife never passed along any message, regardless to what she said to console and ultimately calm my nerves. This prejudiced me by allowing the government to prevail on issues that could only be considered hearsay. In discovery, Government Exhibit 13T, page 8-11, the incoherent duress and irrational behavior is proof that there was no intent. I expressed, 'let them come (to court), do what they do and ride the hell out.' Counsel failed to investigate the evidence himself and therefore was unable to overcome evidence found in discovery, causing me to lose at trial.

[11] Springer fails to specify the basis of his claim that counsel's failure to seek to admit psychiatric evidence constitutes a constitutional violation independent to his ineffective assistance of counsel claim. In any event, the claim is due to be denied for the reasons discussed.

(cv Dkt. 1 at 12). His contentions are without merit.

As the United States explains, exhibit 25 is the letter from Tokatlioglu in which she warned Springer to be careful about what he said and recounted the phone calls in which Springer suggested that "other people do stuff" and asked her "to pass on messages to them, which I never passed on." (cv Dkt 7 at 30; cr Dkt. 114 at 48-49). Notwithstanding, the jury heard evidence that Tokatlioglu told Chastity Cross not to testify and that she told Springer that she had passed on the message. (cr Dkt. 107 at 46); *Springer*, 753 F. App'x at 829. Accordingly, it would have been reasonable for an attorney to not try to "capitalize" on the letter, which emphasized Springer's statements, especially since the United States was not required to prove that Springer's attempts to obstruct justice were successful. *See Springer*, 753 F. App'x at 829-30.

As for Springer's claim that counsel failed to investigate the evidence related to intent, the record demonstrates that counsel did challenge the government's proof of *mens rea* as it related to the April 5 and 6 phone conversations during witness questioning and argument.[12] And even assuming that counsel's performance was deficient by failing to address Springer's statement, "let them come (to court), do what they do and ride the hell out" and any similar statements, the jury was nonetheless presented with "ample" evidence to convict on Counts Two and Three. *See United*

---

[12] As the Supreme Court explains:

> Strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Wiggins v. Smith*, 539 U.S. 510, 521-22 (2003).

*States v. Hatcher*, 541 F. App'x 951, 953 (11th Cir. 2013) (evaluating evidence of guilt in finding no prejudice). Accordingly, Springer cannot establish deficient performance or prejudice, and the claim is due to be denied.

***Ground Five***

In Ground Five, Springer claims counsel was "ineffective for not filing motion of Rule 14 during pretrial." (cv Dkt. 1 at 15). He explains that the charge of

> threatening to assault or murder a judicial official severely prejudiced my right to a fair trial. Counsel entered a not guilty plea, denying guilt of 18 U.S.C. 15(a)(1)(B) and told me "not to worry about the obstruction of justice and witness tampering counts – all they have is some phone conversation." His performance at trial is proof that he was more concerned with the threat charge than he was with the obstruction of justice and tampering with witness allegations the joinder prejudiced [Springer] severely in the form of helping government achieve the guilty verdict.

(Id.). His contentions are without merit.[13]

As the United States points out, there was no basis to sever the counts in the Superseding Indictment. (cv Dkt. 7 at 33).[14] Rule 14 only allows for severance to remedy "prejudicial joinder," which requires the defendant to show "specific and compelling prejudice." *See* Fed. R. Crim. P. 14(a); *United States v. Zielie*, 734 F.2d 1447, 1464 (11th Cir. 1984). It is within a court's "sound discretion" to sever counts or to otherwise address any prejudice caused by the trial of multiple counts. *Zafiro v. United States*, 506 U.S. 534, 538-39 (1993). "Unfair prejudice does not result

[13] Counsel denies that he told Springer "not to worry about the obstruction of justice and witness tampering counts." (cv Dkt 7-1 ¶ 12). Counsel further avers that "it was appropriate to try all the counts together and I saw no reason to seek severance of any of the counts in the Superseding Indictment." (Id.).

[14] Rule 8(a) of the Federal Rules of Criminal Procedure provides that "[t]he indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."

when two offenses are joined if evidence admissible to prove each offense is also admissible to prove the other offense." *United States v. Gabay*, 923 F.2d 1536, 1540 (11th Cir. 1991).

Here, joinder was appropriate since each charge related to Springer's firearm case and was based on overlapping evidence and conduct while he was detained. Springer said he was going to kill the district judge because she was "giving out all that time." *Springer*, 753 F. App'x at 824. And the conduct charged in Counts Two and Three was intended to influence the Crosses' testimony in the firearm case. *Id.* at 824-25. Moreover, Springer has not pointed to any specific and compelling prejudice that warranted severance. Indeed, as the Eleventh Circuit noted, the "district court specifically instructed the jury, twice, that it was to consider the ISIS-related evidence only in connection with the offense charged in Count One." *Id.* at 829. The jury was further instructed that

> A separate crime or offense is charged in each count of the superseding indictment. Each charge and the evidence pertaining to it should be considered separately. The fact that you may find the defendant guilty or not guilty as to one of the offenses charged should not affect your verdict as to any other offense charged.

(cr Dkt. 117 at 106).

In the absence of specific and compelling prejudice, there was no basis to move for severance. And counsel is not ineffective in failing to raise a meritless argument. *See Freeman v. Attorney General, State of Florida*, 536 F.3d 1225, 1233 (11th Cir. 2008). Nor is there any indication that had counsel moved for severance, the Court would have granted the motion. Accordingly, the claim fails and is due to be denied.

***Ground Six***

In Ground Six, Springer contends counsel was ineffective in

> not calling my wife as a witness. . . . She was the only person who knew both sides of what occurred over the phone on April 5th and 6th. She could have easily confirmed or denied her involvement in the conversation with government witnesses. It is a fact that government Exhibit 25 is a letter she wrote me stating that she did not pass on any messages.

(cv Dkt. 1 at 15). His contention is without merit.

As the Eleventh Circuit notes, "[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision." *Conklin v. Schofield*, 366 F.3d 1191, 1204 (11th Cir. 2004). It would have been reasonable for an attorney to believe that Tokatlioglu lacked credibility and that her testimony would be highly detrimental to Springer's case. Indeed, the jury heard evidence that Tokatlioglu told Chastity Cross not to testify and told Springer that she had passed on his message. (cr Dkt. 107 at 46); *Springer*, 753 F. App'x at 829. As a result, the risk in calling Tokatlioglu would have outweighed any benefit, especially since the United States was not required to prove that she had passed on a message to find Springer guilty. In the absence of deficient performance and resulting prejudice, the claim fails and is due to be denied.

***Ground Seven***

In Ground Seven, Springer contends counsel was ineffective in failing

> to request a new trial within fourteen (14) days of the verdict. After being acquitted for the threat on a federal officer, counsel entered direct appeal and did not seek a new trial. This is unusual considering Count 2 and Count 3 had nothing to do with Count 1. I was severely prejudiced because a jury of my peers, who had not heard the intrinsic evidence brought on by the government, would not have been so likely to return a guilty verdict.

(cv Dkt. 1 at 15). His contentions are without merit.

First, Springer is incorrect that "Count 2 and Count 3 had nothing to do with Count 1." Rather, they were related, and separate proceedings were unwarranted. Second, Springer does not specify the basis for a motion for new trial and in any event, he cannot show a reasonable

probability that he would have received a new trial had counsel filed a motion. Indeed, the Eleventh Circuit rejected his arguments that the ISIS-related evidence was improperly admitted or unfairly prejudiced him as to Counts Two and Three. *Springer*, 753 F. App'x at 829-30. Rather, the court found the evidence was "intrinsic to the crime charged in Count One, as it provided the jury with necessary context for Springer's threats and was relevant to prove an element of the offense." *Id.* at 828. And to the extent he argues a new trial was warranted based on the weight of the evidence, the evidence against him was "ample." *Id.* at 829; *see also United States v. Martinez*, 763 F.2d 1297, 1312 (11th Cir. 1985).[15]

Counsel was not ineffective in failing to raise a meritless claim. Accordingly, in the absence of deficient performance and resulting prejudice, the claim fails and is due to be denied.

***Ground Eight***

In Ground Eight, Springer contends "[c]ounsel was ineffective for not challenging and raising error in guideline calculations in appeal." (cv Dkt. 1 at 15-16). He explains that

> the government references cross reference 2X3.1 application note 1. Counsel objected to cross reference and the inconsistency of probation's review of the PSR. . . . Under the commentary of 2J1.2 (obstruction of Justice) . . . "use of this cross reference will provide an enhanced offense level when the obstruction is in respect to a particularly serious offense…" The "underlying offense" level as applied in 2X3.1(a)(1) would be 14 and not 16 as the court suggested at sentencing. . . . Note 1 which government and court misconstrued specifically deal with "underlying offenses" related to narcotics/Drug related cases. . . . Here, [Springer] was a felon in possession at a gun range and had a base offense level of 20; was enhanced 2 levels for renting 3 or more firearms to have the "adjusted offense level of 22."

[15] In his reply, Springer asserts that a new trial was warranted because the prosecution violated his First Amendment rights. (cv Dkt. 15 at 14-16). He provides no relevant authority to support his claim, which is without merit.

(Id.). His contentions are without merit.[16]

Although counsel did address this argument at sentencing, it was not raised on appeal. (cr Dkt. 108 at 4). In any event, Springer fails to establish deficient performance or resulting prejudice because the guidelines were properly calculated. The evidence at trial established that Springer's obstruction and witness tampering convictions related to the firearm case. In that case, his base offense level of 20 was enhanced by a 2-level specific offense characteristic because the offense involved three or more firearms. *United States v. Springer*, 8:16-cr-541-T-24TGW, ECF: 94 at 4, 104 at 20.

As to this case, the resulting offense level of 22 was greater than the specific offense characteristics listed in U.S.S.G. §2J1.2(b), and the offense "involved obstructing the investigation or prosecution of a criminal offense," triggering the cross reference to §2X3.1. U.S.S.G. §2J1.2(c); *see also United States v. Brenson*, 104 F.3d 1267, 1284-85 (11th Cir. 1997). Accordingly, the offense level of 22, less the 6 levels, resulted in a base offense level of 16, which was enhanced 2 levels for Springer's false testimony during trial.[17] (cr Dkt. 108 at 16, 27-28). With a criminal history category of III, Springer faced an advisory guidelines range of 33-41 months. He was

---

[16] To the extent Springer challenges his sentence independent of his ineffective assistance of counsel claims, the challenge is not cognizable. *See Spencer v. United States*, 773 F.3d 1132, 1139 (11th Cir. 2014).

[17] U.S.S.G. §2X3.1(a)(1) directs sentencing courts to compute the base offense level in obstruction cases as "6 levels lower than the offense level for the underlying offense," where "underlying offense" means the offense that the defendant obstructed. *See Brenson*, 104 F.3d at 1284 n.8. Springer seems to argue that the Court should have subtracted 6 levels from an offense level of 20, rather than 22, which was prior to the assessment of the 2-level enhancement. However, he points to no authority that supports his contention. And contrary to his contention, courts have applied the commentary's requirement to "[a]pply the base offense level plus any applicable specific offense characteristics that were known, or reasonably should have been known, by the defendant" outside the context of drug cases. *See, e.g.*, *United States v. Shabazz*, 263 F.3d 603, 608 (6th Cir. 2001). And Springer knew, or reasonably should have known, the facts supporting the specific offense characteristic because he was the defendant in the firearm case. Indeed, in filings in this case, he admits that he used three firearms. (cv Dkt. 15 at 2).

sentenced to 33 months imprisonment, consecutive to the term imposed in the firearm case. (Id. at 28, 40, 44).[18] Accordingly, because there was no basis to raise this claim on appeal, counsel was not ineffective. In the absence of deficient performance and resulting prejudice, the claim fails.

***Supplemental Grounds for Relief***

In Springer's supplement, he contends that "counsel was ineffective as it failed to interview the sole witness to the crime and call this witness to testify to the truth of what occurred on the dates of the alleged violation" and that he "attempted to send correspondence to trial/appellate counsel in order to ask counsel to raise Grounds I, II and III on direct appeal." (cv Dkt. 14 at 1). These additional grounds do not entitle him to relief.

First, as discussed, counsel was not ineffective in failing to call Tokatlioglu as a witness. In an affidavit, she avers that she would have provided exculpatory testimony, including that during the phone conversations she was "trying to put [her] husband at an ease," that he was on "several set[s] of psych meds, anxiety, hallucination medication," and that Springer was upset by the possibility of "a man coming back to [their] household while he isn't present[,] which is not allowed in [their] religious rules and guidelines." (cv Dkt. 14 at 4-7).

However, because the United States presented evidence that she passed on Springer's message, her testimony suggesting otherwise would have raised credibility concerns and would likely have been detrimental to the defense. In any event, the United States was not required to prove that she did communicate Springer's message or that his efforts to influence the witnesses

[18] As the United States observes, the imposed sentence is nonetheless within the guidelines range Springer contends applies. (cv Dkt. 7 at 41).

were successful. As a result, a reasonable attorney could have deemed it unnecessary to interview Tokatlioglu to prepare for trial. *See Wiggins*, 539 U.S. at 521-22.

Second, counsel was not ineffective in failing to raise Grounds One, Two, and Three on appeal, as they are without merit. *See Smith v. Murray*, 477 U.S. 527, 536 (1986) ("[W]innowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." (internal quotation marks and citations omitted)). Moreover, counsel did raise the issue of the ISIS-related evidence on appeal, and the grounds that relate to ineffective assistance of counsel were likely not reviewable on direct appeal. *See United States v. Balcazar*, 775 F. App'x 657, 660 (11th Cir. 2019). Accordingly, he cannot show deficient performance or resulting prejudice, and the additional claims are due to be denied.[19]

***Certificate of Appealability ("COA")***

Springer is not entitled to a COA. A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right," which requires him to demonstrate "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); 28 U.S.C. § 2253(c)(2). Springer has not met this standard. Because he is not entitled to a COA, he cannot appeal *in forma pauperis*.

---

[19] Springer also moves to supplement his § 2255 motion to include a claim under *Rehaif v. United States*, 139 S. Ct. 2191 (2019), contending that he was unaware that it was unlawful for him to possess a firearm. (cv Dkt. 22 at 1). As the United States points out, however, this contention relates to his conviction in 8:16-cr-541-T-24TGW, not the underlying crimes in this § 2255 proceeding. (cv Dkt. 24). His arguments to the contrary are unpersuasive. (cv Dkt. 25). Additionally, *Rehaif* was decided prior to Springer filing his § 2255 motion, and he fails to explain why he has delayed in seeking to raise the claim. Accordingly, the motion to supplement is due to be denied.

## CONCLUSION

Petitioner Springer's § 2255 motion, Motion for Discovery and Production of Documents, and Request to Supplement § 2255 are **DENIED**. (cv Dkts. 1, 12, 22). The Clerk is directed to **CLOSE** the case.

**DONE AND ORDERED** this 20th day of April, 2020.

/s/ James D. Whittemore

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to: Petitioner, Counsel of Record